UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| MERSEN USA - MIDLAND-MI INC, a Michigan corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GRAPHITE MACHINING SERVICES & INNOVATIONS, LLC, a Delaware limited liability company, f/k/a GRAPHITE MACHINING SERVICES, INC., an Arizona corporation.<br><br>Defendant | Civil Action No:<br><br>Honorable _____<br><br>**GRAPHITE MACHINING SERVICES & INNOVATIONS, LLC'S COUNTERCLAIMS AGAINST MERSEN USA –MIDLAND-MI INC.** |

Attorneys for Defendant
Mark J. Brissette
Seward, Tally & Piggott, P.C.
1009 Washington Avenue
Bay City, MI 48708-5780
(989) 892-6551

## GRAPHITE MACHINING SERVICES & INNOVATIONS, LLC'S COUNTERCLAIMS AGAINST MERSEN USA - MIDLAND-MI INC.

Graphite Machining Services & Innovations, LLC ("GMSI"), by its undersigned attorney, asserts the below counterclaims against Mersen USA – Midland-MI Inc.'s ("Mersen") and alleges as follows:

### JURISDICTION & VENUE

1. The parties to this action are completely diverse and the amount in controversy exceeds $75,000.00. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

2. This Court lacks personal jurisdiction over GMSI. GMSI is a Delaware limited liability company, with its principal place of business in Tempe, Arizona. None of its members are residents or domiciled in Michigan. GMSI does not do business in Michigan, nor does it have an office in Michigan. GMSI does not seek out customers in Michigan.

3. This Court has personal jurisdiction over Mersen, as evidenced by among other things, its consent to jurisdiction by filing suit against GMSI in Michigan, it is a Michigan corporation and has its principal place of business in Michigan.

4. While venue is technically proper in this Court because this action was removed from the Circuit Court for the County of Midland, Michigan pursuant to 28 U.S.C. § 1441, this action should be dismissed for lack of personal jurisdiction over GMSI, or in the alternative pursuant to 28 U.S.C. § 1406(a). Alternatively, the Court should transfer this case to the United States District Court for the District of Arizona pursuant 28 U.S.C. § 1406(a), or alternatively 28 U.S.C. § 1404(a).

## BACKGROUND

5. Graphite Machining Services & Innovations, LLC ("GMSI") is a Delaware limited liability company with its principal place of business in Tempe, Arizona.

6. GMSI is in the business of producing, manufacturing, and selling graphite products and machined graphite products that are CVD SIC coated.

7. Mersen USA – Midland-MI Inc. ("Mersen") is, upon information and belief, a Michigan corporation with its principal place of business in the City of Midland, Midland County, Michigan.

8. Mersen, and its predecessor, Midland Materials, which Mersen purchased in or around 2001 or 2002 (both hereinafter referred to as "Mersen"), have been a vendor of GMSI since the mid 1990s.

9. GMSI machines graphite into a specific shape and size and then sends these graphite products to Mersen for application of CVD SIC coating onto the graphite part.

10. GMSI's clients in turn purchase and use the CVD SIC coated graphite products from GMSI.

11. If the graphite CVD SIC coated parts fail because of defective coating, GMSI's customers' property is also damaged as a result of using the failed parts.

12. If the coating fails, the graphite part that GMSI manufactured is wasted and not salvageable.

13. Mersen is familiar with the industry and knows of the consequences of defective coating.

14. GMSI has maintained a favorable and trusted relationship with its clients based on its quality and long lasting products for years.

15. GMSI has more than an 18 year combined course of dealing with Mersen and Mersen's predecessor.

16. GMSI submitted work orders to Mersen with the coating specifications, Mersen would send order acknowledgments to GMSI, coat and ship the products to GMSI, and then invoice GMSI for the coating.

17. Mersen had historically issued credits to GMSI for failed coating through out the numerous years that GMSI used Mersen's coating for its products.

18. Up until 2008, on the rare occasion that the CVD SIC coating provided by Mersen or its predecessor would fail, Mersen would credit GMSI for the part that failed and coat the replacement part at no charge.

19. In or around 2008, Mersen changed its practice and began to credit coating charges and/or the cost of the GMSI part when Mersen broke or destroyed the part, but no longer provided replacement coating free of charge.

20. Beginning in or around May 2010, GMSI began receiving product returns from its clients due to failed coating. These products had been coated by Mersen.

21. Failures in the coating began occurring at a much greater rate in the first quarter of 2011.

22. Failures were even more common between August 2011 and February 2012.

23. The failures can be described as a catastrophic rash of failures.

24. During this time, GMSI received returns of products that Mersen coated from nearly every customer it had because the CVD SIC coating was falling off the graphite, had cracking or pinholes, or had some other variety of premature failure.

25. GMSI continued to receive returned products from its clients from May 2010 through the present because of the failures in the coating that was performed by Mersen.

26. Historically and up until approximately 2008, GMSI's products that were coated by Mersen had lasted hundreds of cycles when used by GMSI's customers, but the products that GMSI's customers returned starting around 2010 lasted only a few process runs before the coating would fail.

27. Due to consistent failing of the products coated by Mersen, GMSI's customers have either refused to run GMSI's products; returned the products, which the needed to be replaced at GMSI's cost; refused to order more products from GMSI; or some combination thereof.

28. The invoices attached to the Complaint are for coating provided by Mersen that was either not in accordance with: (1) GMSI's specifications in its work orders, (2) GMSI's requests for coating, (3) the quality and production standards in the parties' course of dealing, (4) the parties' contracts (5) industry standards, or (6) a combination thereof.

29. GMSI notified Mersen of these failures as early as May 2010.

30. On or around November 6, 2011, GMSI wrote and presented a failure report to Mersen explaining and illustrating the product failure issues.

31. Mersen responded that it would look into the problem.

32. Mersen acknowledged the failures in an internal document quality control documents dated November 11, 2011.

33. Between January and February 2011, GMSI sent a cross section of failing products to Mersen that had prematurely failed at Mersen's request.

34. Mersen represented that it would determine the cause of the failures if GMSI would send the failed products to Mersen.

35. On February 3, 2011 GMSI and Mersen held a conference call to discuss the vast amount of recent coating failures.

36. Mersen failed to reveal its findings related to the cause of the failures to GMSI.

37. Mersen only represented that it found nothing wrong with the coating.

38. Mersen is still in possession of these returned products, some of which are the subject of the invoices that Mersen bases its claims for damages and some of which were products that GMSI has remitted payment for coating to Mersen.

39. On January 12, 2012, GMSI again notified Mersen of additional failures and of the negative consequences that the failures were causing, such as they have "all but stopped [GMSI's] business" and "almost every major client [GMSI] had worked with for years had experienced multiple coating failures in the past couple of months."

40. GMSI is in a very close knit, exclusive industry.

41. Once GMSI's parts started to fail because of Mersen's defective coating GMSI faced a multitude of consequences including lost revenue from sales; damage to customer relationships; loss of previously realized income due to returned products in which GMSI has been forced to credit its customers; out of pocket costs to replace products GMSI had sold to customers which failed; out of pocket costs to provide products to customers free of charge in an effort to re-qualify their products to customers, when prior to the failures GMSI was a qualified provider for more than 12 years; loss of future orders; and loss of goodwill, reputation and credibility with customers and those in the industry.

42. Revenue has been lost from GMSI's two largest customers which is the equivalent of at least millions of dollars.

43. There are still parts that were coated by Mersen in GMSI's customers' possession which GMSI expects may fail, causing it to incur even more loss.

## COUNT I – BREACH OF CONTRACT

44. GMSI incorporates its allegations to paragraphs 1-43 of its counterclaim above as if fully stated herein.

45. In or around 2010, GMSI sent numerous work orders to Mersen specifying the coating it desired to be placed on its graphite parts.

46. Mersen acknowledged these work orders through confirmation emails.

47. Mersen coated the products GMSI sent to Mersen and then shipped the coated products back to GMSI.

48. Mersen invoiced GMSI for the coating.

49. Mersen and GMSI had thereby entered into binding agreements.

50. Mersen did not coat the products as specified and in accordance with the parties' contracts and more than 17 year course of conduct or in accordance with industry standards.

51. The graphite products coated by Mersen prematurely failed or were visibly flawed prior to any use.

52. Mersen breached the parties' contracts by failing to provide the product bargained for.

53. GMSI paid the invoices Mersen sent up until September 2011.

54. GMSI did not however obtain the benefit of the bargain when the coating failed.

55. Additionally, as a direct cause of Mersen's breach in providing the defective coating contrary to the parties' contracts, GMSI was damaged in the form lost revenue from sales; damage to customer relationships; loss of previously realized income due to returned products in which GMSI has been forced to credit its customers; out of pocket costs to replace products GMSI had sold to customers which failed; out of pocket costs to provide products to customers free of charge in an effort to re-qualify their products to customers, when prior to the failures GMSI was a qualified provider for more than 12 years; loss of future orders; and loss of goodwill, reputation and credibility with customers and those in the industry.

56. These damages were contemplated by the parties when entering into the contracts for coating.

57. Mersen is familiar with GMSI's industry, is a competitor of GMSI, and has knowledge of GMSI's customers and the consequences GMSI would suffer if the coating failed.

58. Mersen has breached the agreements to coat GMSI's products.

59. GMSI is entitled to benefit of the bargain damages, including lost profits and consequential damages.

### COUNT II – UNJUST ENRICHMENT

60. GMSI incorporates its allegations to paragraphs 1-59 of its counterclaim as if fully stated herein.

61. Mersen requested payment from GMSI for coating it provided on GMSI graphite parts via invoices.

62. GMSI paid Mersen pursuant to the invoices until September 2011, believing it had received the coating as it requested and in accordance with the quality and durability it expected and was required by the parties' contracts and the parties' 17 plus years of dealing.

63. Mersen received the substantial benefit of the parties' bargains by receiving payment.

64. However, the coating provided to GMSI was defective and caused GMSI's products to fail.

65. GMSI did not receive the benefit of the parties' bargains when it received sub-par and defective coating in lieu of the requested coating.

66. It would be inequitable to allow Mersen to retain the benefit of payment for defective coating, which not only cannot serve its intended purpose, but which has caused GMSI to suffer great loss and damages and exposure to liability from its customers when the failed coating caused damage to the customers' property.

67. As a result, Mersen has been unjustly enriched and should be required to reimburse GMSI for their payments for coating that failed or was flawed.

### COUNT III – BREACH OF IMPLIED WARRANTY

68. GMSI incorporates its allegations to paragraphs 1-67 of its counterclaim above as if fully stated herein.

69. Mersen manufactures and sells CVD SIC coating.

70. Mersen is familiar with the purpose of the CVD SIC coating and with the purpose that GMSI's products that are coated with CVD SIC serve.

71. In fact, Mersen, in or around 2005 or 2006 attempted to manufacture and sell the graphite parts that GMSI produces to one of GMSI's customers.

72. Mersen is aware of the quality and standards its coating must meet to be reasonably fit for the purposes and uses intended and those purposes and uses are reasonably foreseeable to Mersen.

73. Mersen is also aware of the standards required of its coating to be merchantable.

74. Mersen had a duty to produce coating on GMSI's parts that was reasonably fit for the purposes and uses of the coating and that were merchantable.

75. For more than 17 years, Mersen provided coating to GMSI that would last hundreds of process runs.

76. As early as 2010 through the present, the coating provided by Mersen either failed prematurely, some products only lasting for a few process runs, or had visible flaws before use.

77. The coating provided was therefore not reasonably fit for the purposes and uses of the coating when it left Mersen's control, nor was it merchantable.

78. GMSI sustained damages in lost revenue from sales; damage to customer relationships; loss of previously realized income due to returned products in which GMSI has been forced to credit its customers; out of pocket costs to replace products GMSI had sold to customers which failed; out of pocket costs to provide products to customers free of charge in an effort to re-qualify their products to customers, when prior to the failures GMSI was a qualified provider for more than 12 years; loss of future orders; and loss of goodwill, reputation and credibility with customers and those in the industry.

79. Mersen's failed coating was a proximate cause of these damages.

80. GMSI's returned or failed parts were manufactured from different lots of graphite and therefore, upon information and belief, Mersen's coating was the only cause of the failure.

81. GMSI is entitled to compensation for its losses proximately caused by the Mersens breach.

## COUNT IV – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND EXPECTANCY

82. GMSI incorporates its allegations to paragraphs 1-81 of its counterclaim above as if fully stated herein.

83. GMSI has many customers which order graphite parts that are coated with CVD SIC provided by Mersen.

84. GMSI has or had a business relationship with these customers and an expectancy othat the relationship would continue and that the customers would submit additional and future orders for GMSI's product at the time that Mersen provided defective coating to GMSI.

85. The business relationship or expectancy had a reasonable likelihood of future economic benefit for GMSI.

86. GMSI is in a close knit, exclusive industry.

87. Mersen knew of GMSI's business relationships and/or expectancies at the time that they provided defective coating to GMSI which Mersen knew would be sold and used by GMSI's customers.

88. GMSI informed Mersen of its customer relationships and explained to Mersen that its failed coating caused, and was continuing to cause GMSI's customers to return products and cease ordering additional products.

89. Starting around March 2011, Mersen began to represent to GMSI that it would look into and try to remedy the coating failures.

90. Among others, a phone conversation regarding product quality took place with Peter Guercio of GMSI and Brian Marquardt and Kirk Fisher of Mersen on October 13, 2011 in which Marquardt and Fisher represented that Mersen was looking into rectifying the coating failures.

91. On or around November 10, 2011, GMSI wrote and presented a failure report to Mersen explaining and illustrating product failure issues and asking for assistance in resolving the issue.

92. Mersen responded that it would look into the failures.

93. However, according to Mersen's own internal document dated November 11, 2011 that acknowledged the failures, Mersen, upon information and belief, failed to adequately assess and rectify the failures in accordance with industry standards.

94. Brian Marquardt, a sales and customer service contact at Mersen also requested that GSMI send the products with the failed coating to Mersen for analysis, in or around late 2011 and early 2012.

95. GMSI complied with the request and sent shipment of failed parts to Mersen on or around January 12, 2012. And another shipment on February 6, 2012.

96. On February 3, 2012, on a conference call with Peter Guercio of GMSI, Sabine Lemarquis a general manager of Mersen stated that the defective parts that GMSI had returned to Mersen for analysis of the failures at Mersen's request, were reviewed but Mersen was unable to find anything wrong with the coating.

97. On the same February 3, 2011 call, when Peter Guercio specifically asked what analysis Mersen had performed to come to this determination, Sabine Lemarquis and Jeff Sprague, also a general manager for Mersen, evaded the question and failed to disclose material information regarding the analysis and indicated they were not at liberty to share the information.

98. Upon information and belief, adequate review and analysis was either never conducted or if it was conducted, Mersen intentionally concealed the findings to prevent subjecting itself to liability for its defective production.

99. Upon information and belief, Mersen has not performed any analysis or attempted to rectify the failures.

100. Instead, Mersen, a competitor of GMSI, continued to intentionally sell its defective coating that it knew was causing GMSI to lose orders and credibility with its customers.

101. Upon information and belief Mersen was intentionally interfering with the business relationships and expectancies of GMSI.

102. In the past, Mersen has attempted to produce the graphite parts that GMSI produces and sell them to GMSI's customers.

103. Mersen is in the same industry as, and is a competitor of GMSI.

104. Mersen's interference with GMSI's business relationship or expectancy was improper and wrongful.

105. Mersen's conduct caused GMSI's customers to cease ordering new products from GMSI and caused GMSI's customers to return products that had already been purchased.

106. GMSI was damaged as a result of Mersen's conduct in the form lost revenue from sales; damage to customer relationships; loss of previously realized income due to returned products in which GMSI has been forced to credit its customers; out of pocket costs to replace products GMSI had sold to customers which failed; out of pocket costs to provide products to customers free of charge in an effort to re-qualify their products to customers, when prior to the failures GMSI was a qualified provider for more than 12 years; loss of future orders; and loss of goodwill, reputation and credibility with customers and those in the industry.

107. Mersen's conduct was wilful and intentional entitling GMSI to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, GMSI prays for judgment in its favor and against Mersen for the following:

1. Damages in an amount to be proved at trial to fully compensate GMSI for its loss;
   a. Damages in an amount to be proved at trial for the benefit of the bargains for coating, including lost profits and consequential damages;
   b. Damages in an amount to be proved at trial for the credits promised and not received for failed coating;
   c. Damages in an amount to be proved at trial to compensate GMSI for its losses proximately caused by the Mersen's breach of implied warranty;

  d. Damages in an amount to be proved at trial to compensate GMSI for Mersen's tortious interference with business relationships and expectancy including lost revenue from sales; damage to customer relationships; loss of previously realized income due to returned products in which GMSI has been forced to credit its customers; out of pocket costs to replace products GMSI had sold to customers which failed; out of pocket costs to provide products to customers free of charge in an effort to re-qualify their products to customers, when prior to the failures GMSI was a qualified provider for more than 12 years; loss of future orders; and loss of goodwill, reputation and credibility with customers and those in the industry;

2. Alternatively, damages in an amount to be proved at trial for the benefit unjustly conferred on Mersen;

3. Punitive damages;

4. Interest at the highest allowable rate under the law;

5. Attorneys' fees and costs; and

6. Such other relief as the Court deems just and proper.

      Respectfully submitted this 9th day of March, 2012

      SEWARD, TALLY & PIGOTT, P.C.

      By: *Mark J. Brissette* (signature)
      Mark J. Brissette
      1009 Washington Avenue
      Bay City, MI 48708-5780
      (989) 892-6551

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 9th, 2012 I electronically filed a copy of this

Counterclaim via the Court's ECF system, and served a copy via first-class United States Mail,

postage prepaid, on:   Joseph M. Infante, Attorney at Law, 1200 Campau Square Plaza
99 Monroe Avenue, N.W., Grand Rapids, Michigan 49503

 

Respectfully submitted,

SEWARD, TALLY & PIGOTT, P.C.

By: _____
    Mark J. Brissette
    1009 Washington Avenue
    Bay City, MI 48708-5780
    (989) 892-6551

Dated: March 9, 2012