UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MERSEN USA – MIDLAND-MI
INC.,

    Plaintiff/Counter-Defendant,       Case No. 12-10961
                                                          Honorable Thomas L. Ludington

v.

GRAPHITE MACHINING SERVICES
& INNOVATIONS, LLC,

    Defendant/Counter-Plaintiff,
                                              /

**OPINION AND ORDER DIRECTING SUPPLEMENTAL BRIEFING,
DISMISSING CLAIMS, AND DENYING MOTION FOR SUR-REPLY**

    The parties' papers only tangentially address the primary issue in this case — which party breached their contract — and the Court will not address the issue until the parties present their positions with greater clarity. Supplemental briefing will be ordered pursuant to a briefing schedule. The parties' other claims, however, lack merit and can be dismissed at this stage without further investment.

**I**

    On February 1, 2013, Mersen USA – Midland-MI, Inc. filed its second motion for summary judgment. In that motion, Mersen argues that judgment as a matter of law is warranted on the four counterclaims brought by Graphite Machining Services & Innovations, LLC (GMSI). Then, without devoting any argument to its own three claims, Mersen requests "that this Court grant its Motion for Summary Judgment on its Complaint against GMSI and on GMSI's Counterclaim against Mersen." Pl.'s Mot. 20, ECF No. 60. A unique approach, to be sure.

    GMSI responded to the motion for summary judgment on February 25, 2013, and Mersen filed its reply brief on March 14, 2013. GMSI then moved for leave to file a sur-reply, asserting

that new information has come to light which necessitates additional briefing. According to GMSI, the evidence was not available on February 25, 2013 when it responded, but only in the days and weeks that followed.

But the Court cannot make heads or tails of the parties' breach of contract claims. This is in no small part due to the fact that the attorneys have spent little time with the material questions posed by the case.

The logical starting point is the parties' pleadings. Mersen's complaint contains three individual claims: breach of contract, unjust enrichment, and statement of account. GMSI's counter-claim asserts four claims: breach of contract, breach of implied warranties, unjust enrichment, and tortious interference with business relations and expectancy. Established thus far — this case is about a contract.

In its motion, Mersen indicates there is an express contract governing the parties' relationship. *See* Pl.'s Mot. 19 ("Here, an express contract exists between the parties."). GMSI agrees that there are express contracts, Def.'s Resp. 19 ("the express contracts" are the "work orders and invoices"), which are supplemented by implied contractual terms ("the quality standards at issue must be derived from the parties' nearly twenty year course of dealings"), *id*. So there is an express contract, the parties agree on that, with the possibility of additional terms implied through a course of dealing.[1]

---

[1] The Uniform Commercial Code (UCC) "describes a course of dealing as 'a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.'" E. Allan Farnsworth, *Contracts* § 7.13 (4th ed. 2004) (quoting UCC § 1-303(b)). Professor Farnsworth, describing the effect of a course of dealing, continues:

> The concept of a course of dealing, therefore, is relevant only when the parties to an agreement have dealt with each other in similar transactions on previous occasions. Under the Code, a sequence of conduct by the parties in their earlier transactions "may give particular meaning to specific terms . . . and may supplement or qualify the terms" of their later agreement. UCC § 1-303(d). The Code does not make it a condition that the language be ambiguous. The words

Both Mersen and GMSI assert the other breached this contract. What is a threshold requirement for assessing those claims? Identification of the terms of the contract.[2] But the Court's analysis is limited by the fact that the attorneys did not identify those terms (and maybe the parties never have as well).

Mersen argues that, as a matter of law, it is entitled to payment for performing its obligations under the agreement between the parties. But Mersen does not deign to indicate what its obligations under the contract were or how it substantially performed them.

GMSI's papers are equally deficient.[3] GMSI acknowledges there are express contracts, which it claims are buttressed by implied terms from the parties' course of dealing. But like Mersen, GMSI takes no time to indicate what those terms are, nor does GMSI indicate clearly why Mersen's performance did not comply.

Suffice it to say, the parties have skipped over the first, and most important, issue in this case: the contract that governed their respective performance. Without a clear understanding of

---

> *supplement or qualify* make it clear that conduct may have an effect beyond mere interpretation of those terms. Although the term *course of dealing* has been popularized by the Code, the underlying idea that an agreement is to be read in light of the parties' previous dealings is not novel and has force even in situations to which the Code is not literally applicable. *See* Restatement (Second) § 223 (stating an analogous rule).

Farnsworth, *Contracts* § 7.13 (4th ed. 2004) (emphasis in original).

[2] Such as standards for Plaintiff's performance; terms relating to Defendant's right of inspection; those concerning whether goods are accepted or rejected, and if rejected, whether Plaintiff has an opportunity to cure. Although these are UCC terms, and the parties agree the UCC does not apply here, they offer no authority for the proposition, and further, the Court is not convinced the contract cannot constitute a mixed contract for the sale of goods and services under Michigan's "predominant factor test." *See Dahlmann v. Sulcus Hospitality Tech., Corp.*, 63 F. Supp. 2d 772, 774–75 (E.D. Mich. 1999). Additionally, even in cases where the UCC does not apply, courts often analogize to the UCC when faced with service contracts. *See UMIC Gov't Sec., Inc. v. Pioneer Mortg. Co.*, 707 F.2d 251, 253 (6th Cir. 1983) ("While the U.C.C. Article II applies to goods . . . it may be applied by analogy").

[3] GMSI attached, quite literally, thousands of pages of exhibits to its responsive brief. *See* ECF Nos. 66–122. Based on the need for the Court to have and review these pages, one would think GMSI would spend some time citing to those materials to establish a factual predicate for its claims. It was not to be. Instead, GMSI includes one page of "Factual Background," *see* Def.'s Resp. 2–3, ECF No. 66, and leaves the Court to wonder why all these pages were necessary.

that contractual agreement, or the parties' duties thereunder, the Court cannot assess whether the parties have breached. This glaring omission must be remedied.

## II

While the Court will not decide the parties' breach of contract claims, the other claims involved here are meritless and will be dismissed.[4]

### A

Noted above, the parties agree they are governed by an express agreement. This begs the question: Why do they both maintain claims for unjust enrichment? Under Michigan law,[5] "a contract will be implied" to prevent unjust enrichment "only if there is no express contract covering the same subject matter." *Hudson v. Mathers*, 770 N.W.2d 883, 887 (Mich. Ct. App. 2009) (citing *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271, 280 (Mich. Ct. App. 2003)).

---

[4] Mersen's claim for an account stated will not be dismissed at this point, as GMSI did not move for summary judgment on the claim or assert it should be dismissed entirely. Under Michigan law, an account stated is "a balance struck between the parties . . . where a plaintiff is able to show that the mutual dealings which have occurred between two parties have been adjusted, settled, and a balance struck." *Watkins v. Ford*, 37 N.W. 300, 302 (Mich. 1888) (internal quotation marks omitted); *see also Keywell and Rosenfeld v. Bithell*, 657 N.W.2d 759, 777 (Mich. Ct. App. 2002) (per curiam).

In order to demonstrate that fees for services have become an account stated, Mersen must prove that GMSI "either expressly accepted the bills by paying them or failed to object to them within a reasonable time." *Keywell*, 657 N.W.2d at 777 (citing *Corey v. Jaroch*, 200 N.W. 957, 958 (Mich. 1924). It is clear GMSI did not pay the invoices Mersen issued — this is why Mersen brought suit in the first place. So the only remaining question is whether GMSI failed to object to the invoices within a reasonable time. Although not disputed at this time, the Court is highly dubious Mersen can succeed on this claim. This is because Mersen is suing on 53 invoices that were issued between September 13, 2011 and December 1, 2011. *See* Pl.'s Mot. Ex. 1, at 1–53. Mersen admits that "GMSI failed to pay" for its services, and "in November of 2011, [] GMSI began to complain of alleged visual defects with Mersen's coating services." Pl.'s Mot. 4. Attached to GMSI's response is a Rework/Replace/Credit document created by Mersen. The document establishes that GMSI complained as early as October 3, 2011: "Customer supplied material for double coating. 10 came out really rough after first coating run. *Customer will not accept*." Def.'s Resp. AOE Ex. 8 (emphasis added). This shows GMSI was complaining as of October 3 — only 20 days after the first invoice involved in this lawsuit. Likely a reasonable delay, as a matter of law.

[5] The Court has jurisdiction over this matter pursuant to diversity. "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 416 (1996). Further, courts must apply the substantive law of the state in which the court sits. *See Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002). Here, that state is Michigan, and the parties' claims are therefore governed by Michigan law.

GMSI indicates its unjust enrichment claim is "an alternative theory in the event the Court were to determine a valid contract does not exist." Def.'s Resp. 19. An interesting strategy, given the fact that Mersen asserts there is an express contract and GMSI agrees. So why the need for the alternative theory?

But at least GMSI addresses the issue; Mersen makes no attempt at all. It maintains that an express contract exists which bars GMSI's unjust enrichment claim, *see* Pl.'s Mot. 19, and then hypocritically demands judgment on its own unjust enrichment claim, *id.* at 20. Both parties' claims for unjust enrichment are meritless and will be dismissed, as each acknowledges an express contract.

**B**

Also demanding attention at this juncture are two other GMSI counterclaims: those for breach of implied warranty and tortious interference with business relationships. Because there is no basis in fact for these two claims, they will be dismissed as well.

**1**

The parties here agree that the contract between them was for the delivery of services, not goods. *See* Pl.'s Mot. 10 ("the contract between GMSI and Mersen was for services — not the sale of goods"); Def.'s Resp. 4 ("Mersen claims in its motion that only services are involved here. GMSI agrees."). Michigan law does not recognize a breach of implied warranty for merchantability in connection with a service contract, and GMSI's claim for breach of implied warranty thus fails.

In a per curiam opinion, the Michigan Court of Appeals established as follows:

> Plaintiffs also argue that the trial court erred in dismissing the implied warranty claim. Plaintiff cites *Nash v. Sears Roebuck & Co.*, 383 Mich. 136; 174 N.W.2d 818 (1970), for the proposition that "[t]here is a common-law implied warranty in connection with the rendering of a service contract that the service contract will

> be performed in a safe and skillful manner." However, *Nash* does not recognize an implied *warranty* in connection with a service contract. Rather, the Court recognized an implied *duty* in every contract for work or services, the breach of which may form the basis for an action in tort. As this Court observed in *Co-Jo, Inc. v. Strand*, 226 Mich.App 108, 114–115; 572 NW2d 251 (1997), superseded by statute on other grounds as stated in *Compuware Corp. v. Moody's Investor Services, Inc.*, 499 F.3d 520, 532 (6th Cir. 2007)[,] whether negligent performance of a service contract may constitute a breach of an implied warranty is a distinct question. As in *Co-Jo, Inc.*, any negligent performance of a service contract does not establish breach of an implied warranty.

*Butler v. Michigan Consol. Gas Co.*, No. 278063, 2008 WL 2268308, at *1 (Mich. Ct. App. June 3, 2008) (unpublished) (per curiam).

This has not been lost on GMSI, and instead of heedlessly pursuing its meritless breach of implied warranty claim, it admits that "the UCC does not govern services and there is no 'implied warranty' available for services under Michigan law." Def.'s Resp. 4. But GMSI, refusing to give up, changes tack: "there is an implied duty in contracts for services that the thing agreed to be done is performed with ordinary care." *Id*. Noted above, this is true. But then GMSI boldly announces "[n]ow that Mersen asserts that services, not goods, were provided, GMSI proceeds with an implied duty claim, as opposed to an implied warranty theory." *Id*.

Of course, these claims are not interchangeable, but "distinct." *Butler*, No. 278063, 2008 WL 2268308, at *1. GMSI offers no authority for the proposition that it may jump from one horse to another midstream simply because they are "similar, but operate under different names." Def.'s Resp. 4 n.2. As the Sixth Circuit established in *Naples v. Lowellville Police Dept.*, 125 F. App'x 636, 644 (6th Cir. 2005), a claim should be denied when asserted "for the first time in response to [a] motion[] for summary judgment" because such a claim has not been raised properly. *See id*. ("we further find that this due process liberty interest claim was never properly raised by plaintiff because he did not seek to amend the complaint and asserted this new claim for the first time in response to defendants' motions for summary judgment."). Likewise,

GMSI's claim for breach of implied duty, raised for the first time in response to Mersen's motion, is not properly before the Court, and it will be rejected.

**2**

GMSI's claim for tortious interference with business relationships is also without merit. Under Michigan law, tortious interference with a business relationship or expectancy involves the following elements:

> (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005) (citations omitted).

"To establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." *BPS Clinical Labs. v. Blue Cross and Blue Shield of Michigan*, 552 N.W.2d 919, 925 (Mich. Ct. App. 1996) (per curiam) (citing *Feldman v. Green*, 360 N.W.2d 881, 886 (Mich. Ct. App. 1984)). GMSI has produced no evidence, even in the thousands of pages it submitted, demonstrating affirmative acts by Mersen carried out with the intention of interfering with GMSI's business relationships.

GMSI argues that Mersen "intentionally provided purification and coating to GMSI that Mersen knew was defective, and not in compliance with Mersen's stated quality control standards, and above the levels of acceptable impurities." Def.'s Resp. 17. Maybe so, but even if this is true, it is not evidence that Mersen did so to interfere with GMSI and its customers. GMSI claims "Mersen knew the damage its defective coating was causing and could cause

GMSI." *Id*. Again, this is not the evidence necessary to support the conclusion that Mersen provided defective coatings with the intention of subverting GMSI's business relationships.

GMSI also claims that "Mersen expressly states they 'will actively pursue [GMSI's customers'] business.' " *Id*. at 18. But when the evidence is viewed without bracketed mischaracterizations, it does not support GMSI's assertion. In an intercompany email, one Mersen employee wrote to another, "GMSI needs to know that when we bump up against them at any customer, we will actively pursue that business." Def.'s Mot. Ex. 17. With these words, which Mersen made GMSI aware of (as the email was forwarded to GMSI), Mersen indicates that it will not fail to pursue business simply because GMSI pursues it as well. This does not corroborate a claim for tortious interference because it does not demonstrate Mersen's interference with GMSI's current customers. It only indicates Mersen will not refrain from pursuing business from companies GMSI pursues as well.

This email does not demonstrate a lawful act "done with malice and without justification," *BPS Clinical Labs.*, 552 N.W.2d at 925, but a justifiable business strategy for pursuing potential business. One Mersen made GMSI aware of. "Where evidence of an unlawful purpose is absent, the policy of this state will not condemn a party in the proper exercise of a legal right." *Feldman*, 360 N.W.2d at 890 (footnote omitted).

GMSI's additional histrionic assertions that "Mersen had a history of trying to pin GMSI in a corner to harm its business," *id*. at 17, and that "Mersen admitted GMSI was not an important customer," *id*. at 17–18, have no relevance to whether it provided the services complained of here in order to harm GMSI's relationships. Because it has not offered more, GMSI has not satisfied its *prima facie* case for tortious interference, and the claim will be dismissed.

## III

What remains to be discussed are the parties' next actions in the case. Because all that remains are their claims for breach of contract (in addition to Mersen's precarious claim for an account stated), they will be directed to file supplemental briefing addressing those claims alone.

The supplemental briefs should contain careful and accurate references to the discovery record and concise, clear, well-reasoned legal arguments. These briefs must contain each parties' focused view of the terms of the contract, the parties' circumstances, and the governing substantive law.

Mersen's brief will be due first, as it is the party that moved for summary judgment. Its brief will be aimed at establishing how it did not breach the contract (after explaining the applicable terms, of course) because it performed its obligations thereunder. Mersen will also present its argument for how GMSI is instead the party in breach.

GMSI will then respond, indicate what contract terms govern and why, and then present its argument to demonstrate Mersen did not live up to those terms. GMSI must indicate, clearly and concisely, how it has been damaged by this breach. Further, if GMSI wishes to stretch damages beyond those currently known to extend to consequential losses, it must explain why that should be done and present legal authority for the proposition.[6]

---

[6] As established by the Michigan Supreme Court:

> [T]he damages recoverable for breach of contract are those that arise naturally from the breach or those that were in contemplation of the parties at the time the contract was made. Application of this principle in the commercial contract situation generally results in a limitation of damages to the monetary value of the contract had the breaching party fully performed under it.

*Lawrence v. Will Darrah & Assoc., Inc.*, 516 N.W.2d 43, 45 (Mich. 1994) (citations omitted) (quoting *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854)).

**IV**

Accordingly, it is **ORDERED** that Mersen's claim for unjust enrichment (Count II) is **DISMISSED** with prejudice.

It is further **ORDERED** that GMSI's counterclaims for unjust enrichment (Count II), breach of implied warranty (Count III), and tortious interference (Count IV) are **DISMISSED** with prejudice.

It is further **ORDERED** that Mersen is **DIRECTED** to file its supplemental brief no later than May 31, 2013. The brief is limited to no more than fifteen pages.

It is further **ORDERED** that GMSI is **DIRECTED** to file its supplemental brief no later than June 14, 2013. The brief is likewise to be no more than fifteen pages. No responsive briefs will be permitted.

It is further **ORDERED** that GMSI's motion for leave to file a sur-reply, ECF No. 131, is **DENIED** as moot.

Dated: May 22, 2013          s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 22, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS