UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MERSEN USA – MIDLAND-MI, INC.,

                    Plaintiff/Counter-Defendant,            Case No. 12-10961
                                                          Honorable Thomas L. Ludington

v.

GRAPHITE MACHINING SERVICES
& INNOVATIONS, LLC,

                    Defendant/Counter-Plaintiff.
_____/

**OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO AMEND/CORRECT JUDGMENT**

On March 2, 2012, Graphite Machining Services & Innovations, LLC (GMSI) removed this case to this Court. The lawsuit arises from a complaint filed by Mersen USA – Midland-MI, Inc. (Mersen) alleging that GMSI breached the contractual agreements between the parties. GMSI answered the complaint and filed a counterclaim on March 9, 2012. Relevant to this order, GMSI's counterclaim included allegations that Mersen tortiously interfered with GMSI's business relationships or expectancies. *See* Def.'s Countercl. ¶¶ 82–107, ECF No. 3.

Mersen filed a motion for summary judgment on February 1, 2013, arguing that all four of GMSI's counterclaims are without merit. On May 22, 2013, the Court issued an Opinion and Order granting Mersen's motion in part — dismissing three of GMSI's counterclaims (including the one for tortious interference). *See* May 22, 2013 Op. & Order 10, ECF No. 132. Then, on June 19, 2013, GMSI filed a motion to amend or correct a judgment pursuant to Federal Rule of Civil Procedure 59(e). GMSI argues that "[t]his Court should alter or amend its judgment because there has been a clear error in law and there is a need to prevent a manifest injustice." Def.'s Mot. 8, ECF No. 142 (citation omitted).

Of course, no judgment exists to be altered or amended.  In addressing Mersen's motion for summary judgment, the Court only dismissed three of GMSI's counterclaims and one of Mersen's claims.  The parties' breach of contract claims remain pending.  Thus, no judgment was entered.  But application of Rule 59(e) requires exactly that.  As noted by Wright & Miller, "Rule 59(e) covers a broad range of motions, and the only real limitation on the type of the motion permitted is that it must request a substantive alteration of the *judgment*."  11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2810.1 (3d ed. 2012) (emphasis added); *see also Moodie v. Fed. Reserve Bank of New York*, 835 F. Supp. 751, 752 (S.D.N.Y. 1993) ("The present motion is inappropriate under Rule 59 because the Bank's earlier motion for summary judgment was denied, hence no judgment was entered on which the Bank could bring a motion to alter or amend.").  Because the initial order addressing Mersen's summary judgment motion did not lead to a final judgment, a Rule 59(e) motion is wholly inappropriate.

Local Rule 7.1 does permit a party to move for rehearing or reconsideration of an order as well as a judgment, but a motion brought under that rule "must be filed within 14 days after entry of the judgment or order."  E.D. Mich. LR 7.1(h)(1).  GMSI's motion comes exactly 28 days from the entry of the complained-of opinion and order, and it is untimely as a motion for reconsideration.

The Court could construe GMSI's motion as one for relief from an order under Federal Rule of Civil Procedure 60.  Rule 60 allows a court to relieve a party from a "final judgment, order, or proceeding" because of, among other things, "mistake" or "any other reason that justifies relief."  Fed. R. Civ. P. 60(b).  However, as the requirement of a "final judgment, order or proceeding" implies, "ordinarily, a motion under Rule 60(b) may not be made unless the order

to be reconsidered is a final ruling from which an appeal could have been taken." *United States v. Iron Mountain Mines, Inc.*, 812 F. Supp. 1528, 1555 (E.D. Ca. 1992). As discussed, that is not the case here. The Court notes, however, that it "retains plenary power to afford relief from interlocutory orders and judgments 'as justice requires' notwithstanding Rule 60(b)." *Id.* (citation omitted). So despite the fact that GMSI has not brought its motion under Rule 60(b), perhaps justice requires attending to the motion on the merits.

And yet, even if the Court ignores the fact that GMSI's motion is untimely under Local Rule 7.1 and that Federal Rules of Civil Procedure 59 and 60 do not apply — and nonetheless, in the interests of justice, addresses the motion on its merits — the motion is without merit. Because neither justice nor the merits of GMSI's motion justifies relief, the motion will be denied.

## I

GMSI argues at length that its tortious interference claim should not have been dismissed because the Court erred in the application of law. Specifically, GMSI contends that the Court applied the incorrect legal standard when it required a showing that Mersen intended to interfere with GMSI's business relationships or expectancies.

Under Michigan law, tortious interference with a business relationship or expectancy involves the following elements:

> (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted.

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843, 849 (Mich. Ct. App. 2005) (citations omitted). GMSI agrees, citing the same legal standard and case authority in its motion to alter or amend. *See* Def.'s Mot. 8.

But according to GMSI, it need not demonstrate that Mersen literally intended to interfere with its business relationships, but rather only that Mersen "acted knowing that its conduct was certain or substantially certain to cause interference." Def.'s Mot. 8. Notably, this is not the standard that GMSI contended was applicable in its response to Mersen's motion for summary judgment; in fact, GMSI's response makes no mention of such a standard. Nevertheless, GMSI now asserts that it can satisfy its *prima facie* requirement of demonstrating intent with evidence that Mersen acted knowing that its conduct was substantially certain to interfere with GMSI. The Court disagrees.

Not a single Michigan case that the Court can locate applies a "substantially certain" standard to demonstrating intent under a claim of tortious interference with a business relationship or expectancy. Rather, the Michigan Supreme Court requires that a party asserting a claim for tortious interference demonstrate "an intentional interference by the defendant." *Cedroni Assoc., Inc. v. Tomblinson, Harburn, Assoc.*, 821 N.W.2d 1, 3 (Mich. 2012). Moreover, a plaintiff "must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law *for the purpose of invading the contractual rights or business relationship of another*." *Cranbrook Prof'l Bldg., LLC v. Pourcho*, No. 251422, 2005 WL 415678, at *3 (Mich. Ct. App. Feb. 22, 2005) (emphasis added).

On this point, *P.T. Today, Inc. v. Blue Cross & Blue Shield of Michigan*, No. 211294, 2001 WL 824462 (Mich. Ct. App. July 20, 2001) is instructive. In that case, the Michigan Court of Appeals established as follows:

- 4 -

> Even assuming that plaintiffs possessed legitimate expectancies regarding the opportunity to provide physical therapy services to certain individuals, *and that BCBSM must have had some knowledge that its application of its physical therapy provider class plans would interfere with plaintiffs' expectancies*, we find that plaintiffs nonetheless failed to demonstrate that BCBSM improperly *intended any interference*.

*Id.* at *2 (emphasis added). So as applied by Michigan courts, a party's knowledge that its conduct may interfere with another's business expectancies is insufficient to support a claim for tortious interference. Instead, interference must be the party's intended purpose. *See also Pedell v. Heartland Health Care Ctr.*, No. 271276, 2007 WL 840876, at *9 (Mich. Ct. App. Mar. 20, 2007) ("plaintiff lacks evidence that defendants' [sic] *intentionally* interfered with plaintiff's business expectancies, as required. Even if the other elements of this claim are satisfied, plaintiffs do not cite evidence that when defendants fired plaintiff, they did so in order to interfere with his business expectancies." (emphasis in original) (citation omitted)); *Salmon v. City of Cadillac*, No. 263586, 2005 WL 3416119, at *9 (Mich. Ct. App. Dec. 13, 2005) ("In this case, plaintiffs produced no evidence that any of CAFM's actions were *specifically intended* to harm plaintiffs. . . . Accordingly, the trial court properly granted CAFM summary disposition regarding [the interference with a business relationship or expectancy] claim." (emphasis added)).

In fact, the Court has found no Michigan case where the intent element was satisfied absent evidence that the interference was the intended purpose of a party's conduct. *See Cedroni Assoc.*, 821 N.W.2d at 3; *see also Xpress Appraisal Grp., Inc. v. Flagstar Bank*, No. 305991, 2013 WL 1149822, at *5 (Mich. Ct. App. Feb. 14, 2013) (requiring party to show interference was "intentional"); *Nicklas v. Green Green & Adams, P.C.*, No. 299054, 2012 WL 2126066, at *4 (Mich. Ct. App. June 12, 2012) ("To fulfill the third element, intentional interference inducing or causing a breach of a business relationship, a plaintiff must demonstrate that the

defendant acted both intentionally and either improperly or without justification." (citation omitted)); *Siddiqui v. Gen. Motors Co.*, No. 302446, 2012 WL 335680, at *6 (Mich. Ct. App. Feb. 2, 2012) ("To meet the third element of tortious interference with a business relationship, a plaintiff must establish that the defendant (1) acted intentionally, and (2) acted either improperly or without justification." (citation omitted)); *CH Holding Co. v. Miller*, No. 293686, 2011 WL 5008573, at *2 (Mich. Ct. App. Oct. 20, 2011) ("In other words, the intentional act that defendants committed must lack justification and *purposely interfere* with plaintiffs' contractual rights or plaintiffs' business relationship or expectancy." (emphasis added) (citation omitted)).

GMSI argues otherwise. It claims that it does not have to demonstrate Mersen intended to interfere with its business relationships, but only that Mersen knew its conduct was substantially certain to interfere. GMSI supports the argument with Michigan's Model Civil Jury Instructions, which indicate that to prove intent for tortious interference with business relationship or expectancy, a party must show that "defendant's primary, but not necessarily sole, purpose was to interfere with plaintiff's business relationship or expectancy, or defendant acted knowing that [his/her] conduct was certain or substantially certain to cause interference with plaintiff's business relationship or expectancy." M. Civ. JI 126.03 (brackets in original).

GMSI also cites *Formall, Inc. v. Cmty. Nat'l Bank of Pontiac*, 421 N.W.2d 289 (Mich. Ct. App. 1988) to support its contention that a "substantially certain" analysis applies to this claim (likely because the Model Jury Instructions indicate they were adapted from the case). But upon further review, the case is simply not applicable. And even if it was, it does not support the weight GMSI heaps upon it.

First, *Formall* involved a claim for "tortious interference with contractual relations," not interference with business relations or expectancies. *See id.* at 294. It is well recognized that

- 6 -

"[i]n Michigan, tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy." *Health Call*, 706 N.W.2d at 848 (collecting cases).

Second, even if the case did apply, GMSI misstates its authority. The court in *Formall* indicated that the "requirement that there be allegations of malice or wrongful intent as a prerequisite to stating a cause of action for the interference with contract" had been abolished. *Formall*, 421 N.W.2d at 293. But with the very next line, the court made clear that "by no means did *Dassance* abolish the requirement that there be some type of inducement or *purposeful* intereference [sic]." *Id.* (emphasis added). Thus, even under *Formall*, GMSI would have to show that underlying Mersen's conduct was a purposeful attempt to interfere; not just that it knew its actions could interfere.

So while the Court acknowledges that the Michigan model jury instructions indicate intent may be proven through a party's knowledge that a result is certain or substantially certain from its conduct, no Michigan case applies such a standard. GMSI did not produce such a case, and the Court could not locate one. Instead, as evidenced above, Michigan state courts require proof of intent — that a party's conduct was undertaken with the purpose of causing some improper interference. Knowledge that interference *may* occur is simply insufficient. *See P.T. Today*, No. 211294, 2001 WL 824462, at *2; *Pedell*, No. 271276, 2007 WL 840876, at *9; *Salmon*, No. 263586, 2005 WL 3416119, at *9. Justice does not require GMSI's motion be granted.

## II

GMSI also complains that the Court did not assess Mersen's actions "as a whole, as opposed to individually." Def.'s Mot. 1. And it argues that the Court "did not appear to view

the evidence and the inferences to be drawn therefrom in the light most favorable to GMSI." *Id.* Both arguments miss the mark.[1]

First, the Court did analyze Mersen's conduct as a whole, it simply addressed each item of evidence GMSI offered in turn. As the Court explained, "GMSI has produced no evidence . . . demonstrating affirmative acts by Mersen carried out with the intention of interfering with GMSI's business relationships." May 22, 2013 Op. & Order 7. The fact that the Court analyzed the evidence from there, piece by piece, was an attempt to be thorough; it did not mean the Court failed to view the evidence collectively. Because GMSI could not offer any one piece of evidence which demonstrated Mersen's improper intent, it necessarily follows that all of that evidence together was not sufficient to do so. This argument is without merit.

Next, GMSI's claim that the evidence was not taken in the most favorable light to the nonmoving party is simply mistaken. GMSI offered an email wherein one Mersen employee wrote to another, "GMSI needs to know that when we bump up against them at any customer, we will actively pursue that business." Def.'s Mot. Summ. J. Ex. 17. With these words, which Mersen made GMSI aware of (as the email was forwarded to GMSI), Mersen indicated that it would not fail to pursue business simply because GMSI pursued it as well. The Court concluded that the email does not corroborate a claim for tortious interference because it does not demonstrate that when Mersen coated GMSI's parts pursuant to its contract with GMSI, it did so with the intent to interfere with GMSI's current relationships or expectancies.

GMSI argues the obvious interpretation is that the email evidences Mersen's intent to interfere with its current customers with improper conduct. But this interpretation does not save

---

[1] GMSI makes a fourth argument in support of its motion — that Mersen carries the burden of demonstrating that its conduct was justified by a legitimate business purpose, not GMSI. However, this issue need only be reached once GMSI satisfies its *prima facie* burden. *See Wilkinson v. Powe*, 300 Mich. 275, 282 (1942). Because the Court holds GMSI cannot do so, whether Mersen showed its conduct was justified will not be addressed.

GMSI's claim.  GMSI must show not only that Mersen intentionally interfered, but that Mersen's interference was improper.  *Lentz v. Isabella Cnty.*, No. 292237, 2010 WL 3604397, at *2 (Mich. Ct. App. Sept. 16, 2010) ("The interference with a business relationship must be improper in addition to being intentional." (brackets omitted)).  There is nothing improper about prospectively pursuing the same business as a competitor in a free-market economy.

Moreover, the email does not indicate that Mersen's conduct — that which forms the basis of this lawsuit — was intended to interfere with GMSI's relationships.  "Where evidence of an unlawful purpose is absent, the policy of this state will not condemn a party in the proper exercise of a legal right."  *Feldman v. Green*, 360 N.W.2d 881, 890 (Mich. Ct. App. 1984).

Because GMSI's motion is without merit, there is no justification to overlook the strictures of Local Rule 7.1 or Federal Rules of Civil Procedure 59 and 60.  The motion will be denied.

### III

Accordingly, it is **ORDERED** that GMSI's motion to alter or amend judgment, ECF No. 142, is **DENIED**.

Dated: June 26, 2013                                                        s/Thomas L. Ludington
                                                                                    THOMAS L. LUDINGTON
                                                                                    United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 26, 2013.

                                    s/Tracy A. Jacobs
                                    TRACY A. JACOBS

---